807 P.2d 228

STATE of New Mexico,
Plaintiff–Appellee,

v.

Donal Chad GOSS and Johnny Blayne
Goss, Defendants–Appellants.

No. 11686.

Court of Appeals of New Mexico.

Jan. 3, 1991.

Certiorari Denied Feb. 14, 1991.

Hal Stratton, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Deborah Davis Walker, Timothy M. Padilla & Associates, P.C., Albuquerque, for defendants-appellants.

OPINION

DONNELLY, Judge.

The prior decision of the court is withdrawn and the following is substituted. Defendants appeal from judgments and sentences convicting them of unlawful distribution of marijuana contrary to NMSA 1978, Section 30–31–22 (Repl.Pamp.1989), following their entry of pleas of no contest. In their plea agreements, defendants expressly reserved the right to appeal the trial court's orders denying their motions to suppress evidence obtained after they were stopped at a state police roadblock. Two issues are raised on appeal: (1) whether the trial court erred in determining that the roadblock which resulted in defendants' arrests was legal; and (2) whether the detention of defendants and the subsequent search of the vehicle and seizure of the marijuana were lawful and supported by probable cause. We affirm the ruling of the trial court.

On the morning of March 24, 1988, State Police Officer Clifford Frisk obtained permission from his immediate supervisor, Sergeant Clayton Floyd, to establish a roadblock adjacent to the intersection of U.S. Highway 62–180 and State Road 176 near Hobbs. Frisk testified that although he did not expressly discuss the purpose of the proposed roadblock with Sergeant Floyd, he had previously been instructed that absent a specific order directing the establishment of a roadblock for other purposes, he was permitted to establish a daytime roadblock only for the purpose of checking the validity of drivers' licenses, motor vehicle registration, and proof of vehicle insurance. Frisk also testified that he was not permitted to establish a roadblock without authorization from a supervisory officer.

After obtaining authorization, Officer Frisk and State Police Officer Jesse Orozco established and conducted the roadblock, accompanied by a Eunice Municipal Police Officer. Frisk and Orozco began stopping cars at approximately 11:00 a.m. Some twenty minutes later, a Chevrolet double cab pickup truck with a camper shell was stopped at the roadblock. Defendant John-

ny Goss (Johnny) was driving; defendant Donal Goss (Donal) was a passenger in the vehicle.

Officer Frisk approached the vehicle and asked Johnny for his driver's license, the vehicle registration, and proof of vehicle liability insurance. Johnny handed Frisk his driver's license and the vehicle registration. Officer Frisk testified that when he approached the open window of the pickup cab he could smell the odor of marijuana. Frisk stated that he then walked to the rear of the truck in order to ascertain whether the license plate was current and detected a strong odor of marijuana emanating from the back of the truck. Frisk looked through the side window of the camper shell and saw sleeping bags laid out on an elevated platform over the bed of the pickup.

Officer Frisk ordered Johnny to pull his truck over to the shoulder of the highway and then asked permission to look at the ashtray of the cab. He testified that Johnny agreed and pulled it out and handed it to him. Frisk then inquired how defendants got into the bed of the truck, and Johnny said they did not have a key to the back of the camper shell but that they were able to obtain access into the camper shell through the sliding windows in the rear of the pickup cab. Frisk testified that Johnny then demonstrated how the windows opened and "when he opened the [windows to the] back, [the smell of marijuana] was overwhelming."

Frisk testified that during his conversation with defendants, Johnny lifted a plywood panel in the bed of the pickup revealing a number of bundles wrapped in white or clear plastic. Frisk then asked Johnny for permission to look further under the plywood panel and Johnny said, "Go ahead." When the officer lifted the plank he observed several packages which later proved to be marijuana.

Defendants were then arrested for possession of a controlled substance and advised of their *Miranda* rights. Following his arrest, Johnny signed a written consent authorizing the officers to search the pickup. Subsequently, both defendants signed similar forms consenting to a search of the vehicle. The police search of the truck revealed that it contained 831 pounds of marijuana located in the bed of the pickup.

## I. VALIDITY OF ROADBLOCK

■ Defendants challenge the validity of the roadblock which resulted in their detentions and arrests. Specifically, defendants argue on appeal that the roadblock in question violated the fourth and fourteenth amendments of the United States Constitution, Article II, Sections 10 and 18 of the New Mexico Constitution, and that the state failed to comply with the guidelines articulated in *City of Las Cruces v. Betancourt*, 105 N.M. 655, 735 P.2d 1161 (Ct. App.1987), regarding the establishment and conduct of the roadblock in question and the subsequent search and seizure.

Routine police roadblocks established for the purpose of checking drivers' licenses, vehicle registrations, and the existence of vehicle liability insurance have been previously upheld by both our supreme court and this court. *See State v. Bloom*, 90 N.M. 192, 561 P.2d 465 (1977); *State v. Valencia Olaya*, 105 N.M. 690, 736 P.2d 495 (Ct.App.1987). *See also State v. Ruud*, 90 N.M. 647, 567 P.2d 496 (Ct.App.1977).

Defendants argue on appeal that the trial court failed to properly apply the *Betancourt* factors in determining whether the roadblock in the instant case was reasonable; defendants also request that this court further expand the requirements of *Betancourt*. On the record before us, however, defendants have failed to indicate that this issue was properly preserved or argued before the trial court. Although we agree with defendants that in establishing the roadblock herein, state authorities appear to have given only minimal consideration to the threshold requirements of *Betancourt*, nothing in the record before us indicates that defendants argued to the trial court their appellate claims of noncompliance with *Betancourt*. At the hearing on their motion to suppress, Officer Orozco was examined by both parties as to the creation of the roadblock; however, the record does not reflect that a specific chal-

lenge was made by defendants to the trial court concerning the constitutionality of the roadblock itself.

The briefs relating to the motion to suppress submitted to the district court by both parties do not refer to *Betancourt.* Examination of the record shows that legal memoranda, submitted by the parties to the trial court following the hearing on defendants' motion to suppress, omit any challenge to the legitimacy of the roadblock itself. Defendants' motion to suppress alleged that "the stop and/or detention of the vehicle" was without probable cause and a reasonable articulable suspicion; however, the third paragraph of defendant's memorandum brief submitted to the trial court incident to the motion to suppress states: "Both Defendants contend, and Officer Frisk corroborates, that all paperwork was in order on the morning in question. *Thus, the initially lawful stop became unlawful because of the length of detention.*" (Emphasis added.) SCRA 1986, 12–213(A)(3) (Cum.Supp.1990), requires that appellants' brief-in-chief set forth their arguments *"with respect to each issue presented [indicating how such issue was] preserved in the court below,* with citations to authorities and parts of the record proper, transcript of proceedings or exhibits relied on." (Emphasis added.)

■ Where defendants have failed to comply with Rules 12–208 and –213, or to indicate that the issue sought to be argued on appeal is jurisdictional, or that the issue was properly preserved for appellate review, an appellate court may decline to address such contention on appeal.[1] *See State v. Martin,* 90 N.M. 524, 565 P.2d 1041 (Ct.App.1977); *State v. Sanchez,* 89 N.M. 673, 556 P.2d 359 (Ct.App.1976). Matters not specifically called to the trial court's attention, unless jurisdictional, will not be considered for the first time on appeal. *Barnett v. Cal M, Inc.,* 79 N.M. 553, 445 P.2d 974 (1968).

■ Generally, motions to suppress must set out with particularity the grounds relied on for the relief sought. *See* 4 W. LaFave, *Search and Seizure* § 11.2(a), 214 (2d ed.1987). "[This] requirement is [premised upon a necessity of] specificity in the statement of defendant's legal theory." *Id.* (citing *State v. Miller,* 17 Or.App. 352, 521 P.2d 1330 (1974)). *See also* SCRA 1986, 5–601(E) (1986 Recomp.). A similar requirement has been recognized with respect to motions in civil cases. *See National Excess Ins. Co. v. Bingham,* 106 N.M. 325, 742 P.2d 537 (Ct.App.1987) (movant required to set forth grounds for motion with specificity).

Under these circumstances, we determine that defendants have failed to preserve for appellate review their claim of challenge to the lawfulness of the roadblock in question.

## II. VALIDITY OF THE SUBSEQUENT DETENTION, SEARCH AND SEIZURE

■ Defendants further argue that even if the roadblock stop was properly authorized and established, the subsequent detention and search of their vehicle was nevertheless unlawful. Defendants assert that the avowed purpose of the roadblock was to check the validity of motorists' driver's licenses, registration, and vehicle liability insurance, and that despite the fact that they supplied the requested documents they were further subjected to unreasonable detention and their vehicle searched. Defendants also argue that their detention by the officers was pretextual in nature, in order to enable the officers to inspect and search their vehicle for controlled substances.

■ Whether the detention of defendants and their vehicle was reasonable was a factual issue to be resolved by the court below, based upon the evidence presented. *See State v. Cohen,* 103 N.M. 558, 711 P.2d

1. We do not consider the affidavit of defense counsel, filed after the case was at issue on appeal, as validly supplementing the official record made in the court below. *See* SCRA 1986, 12–209(B) and (C). Contentions not presented before the trial court, stipulated to by each of the parties, or contained in the record proper are not reviewable on appeal. *See State v. Silver,* 83 N.M. 1, 487 P.2d 910 (Ct.App.1971).

3 (1985). *See also State v. Bolton*, 111 N.M. 28, 801 P.2d 98 (Ct.App.1990). The standard of review on appeal from denial of a motion to suppress is whether the trial court's findings were supported by substantial evidence. *State v. Bloom; State v. Padilla*, 95 N.M. 86, 619 P.2d 190 (Ct. App.1980). Similarly, whether or not reasonable suspicion or probable cause exists to detain a motorist following a routine roadblock stop constitutes a question of law; however, related factual determinations may also be implicated. Thus, questions involving the existence of reasonable suspicion or probable cause may become mixed questions of law and fact. *See State v. Anderson*, 107 N.M. 165, 754 P.2d 542 (Ct.App.1988); *State v. Marquez*, 103 N.M. 265, 705 P.2d 170 (Ct.App.1985).

■ Where the evidence is conflicting it is for the trial court to resolve disputed factual issues. *State v. Anderson.* Probable cause exists when facts and circumstances within the officers' knowledge are adequate to warrant a person of reasonable caution to believe that an offense has been or is being committed. *State v. Copeland*, 105 N.M. 27, 727 P.2d 1342 (Ct.App.1986). *See also State v. Donaldson*, 100 N.M. 111, 666 P.2d 1258 (Ct.App.1983). Probable cause means more than suspicion but less than certainty and requires only that probability of criminal conduct be shown. *State v. Copeland.*

The state asserts that the odor of marijuana gave Officer Frisk probable cause to detain defendants and to further investigate the vehicle's contents. At the hearing on defendant's motion to suppress, Officer Frisk testified that he detected an odor of marijuana when he first approached the cab of defendants' vehicle. He further testified that the odor became more apparent when he went to the rear of the truck to check whether the vehicle license plate was current.

■ Defendants argue other evidence adduced at the hearing contradicted Frisk's testimony that he smelled the odor of marijuana, rendering the officer's testimony implausible. In considering defendants' motion to suppress, the trial court was enti-tled to determine the credibility of the witnesses and the weight to be given to such testimony. *State v. Bloom.* On appeal we will not substitute our judgment for that of the fact finder below. *State v. Casteneda*, 97 N.M. 670, 642 P.2d 1129 (Ct.App.1982). It is settled law that detection of the odor of marijuana by law enforcement officers may provide probable cause for detention of an individual and constitute a valid basis for further investigation. *State v. Capps*, 97 N.M. 453, 641 P.2d 484, *cert. denied*, 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982).

Although defendants are correct that the contested evidence was subject to conflicting interpretations and inferences, the trial court as the fact finder was empowered to weigh the evidence, determine the credibility of the witnesses, and resolve any conflicts in the evidence. *See State v. Bloom.* Under this standard, we find no error in the trial court's denial of the motion to suppress.

■ The state presented evidence indicating that following the initial stop, the period of detention was brief and that defendants voluntarily consented to the search of their vehicle. Officer Frisk testified that defendants consented to his request to look inside the truck and that they signed voluntary waivers consenting to the search. The written consent forms executed by defendants were introduced at the hearing on the motion to suppress. The question of voluntariness of consent to search is a question of fact to be decided by the district court. *See State v. Cohen; United States v. Corral*, 823 F.2d 1389 (10th Cir.1987), *cert. denied sub nom.* 486 U.S. 1054, 108 S.Ct. 2820, 100 L.Ed.2d 921 (1988). The burden of proof is on the state to show by clear and positive evidence that the consent was given without duress, coercion, or other vitiating factors. *State v. Valencia Olaya.* A consent to search is valid if it is not the product of duress or coercion. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). *See also United States v. Corral.* On appeal, the standard of review regarding the voluntariness of a consent to search

is whether there is substantial evidence from which a reasonable trier of fact could find voluntary consent by clear and convincing evidence. *See State v. Anderson.*

As indicated by the evidence detailed above, the state presented testimony indicating the existence of probable cause to detain defendants after their initial stop at the roadblock and that the detention was brief and reasonable in nature, and there is substantial evidence from which the trial court could properly determine that defendants voluntarily consented to the search.

The order denying the motion to dismiss is affirmed.

IT IS SO ORDERED.

HARTZ, J., concurs.

MINZNER, J., specially concurs.

MINZNER, Judge, specially concurring.

I concur in the result reached by the majority with respect to both issues addressed in the opinion. I concur in all of the discussion as to the second issue. I concur in most of the discussion as to the first issue.

With respect to the first issue, my only reservation about the discussion arises from the statement that "motions to suppress must set out with particularity the grounds relied on for the relief sought" as that statement is applied to this case. I am concerned that statement may be viewed as suggesting defendants' motion to suppress was too general to preserve the arguments made on appeal with respect to the roadblock and thus that only a specific motion would have been sufficient. I view the motion as too specific and believe that defendants in effect conceded the legality of the initial stop.

As indicated by the majority, the arguments made on appeal include the proper application of the guidelines contained in *City of Las Cruces v. Betancourt*, 105 N.M. 655, 735 P.2d 1161 (Ct.App.1987), as well as an extension of *Betancourt*. *Betancourt* provides guidance to the trial court in determining the reasonableness of a roadblock under the fourth amendment. The ultimate question is "the reasonable-

ness of a roadblock" within the meaning of the fourth amendment. *Id.* at 658, 735 P.2d at 1164. I agree that appellate review would be facilitated if defendants who intend to challenge roadblocks on the basis of the application of the *Betancourt* guidelines were as specific as possible in oral and written submission to the trial court. Nevertheless, I believe that a general challenge to the reasonableness of a roadblock under the fourth amendment requires the trial court to consider the extent to which the state's showing satisfies the *Betancourt* guidelines.

Defendants' motion to suppress was not a general challenge. Although they contended that the stop and detention were without probable cause and reasonable suspicion, their motion states "[t]he initial stop was for routine traffic reasons, i.e., license and registration check, which were verified immediately. Thus any further detention and/or seizures was [sic] in violation of Defendant's rights." As the majority has noted, the trial brief submitted by defendants describes the stop as lawful. In that brief defendants primarily contended that Officer Frisk detained them as a pretext to search for drugs, rather than that he stopped them as a pretext to search for drugs. Under these circumstances, the argument made to the trial judge appears to have been that Officer Frisk detained defendants for a period longer than was required to accomplish a document check. I conclude that defendants focused their attention at trial on what this court described in *State v. Bolton*, 111 N.M. 28, 801 P.2d 98 (Ct.App.1990), as the decision to hold for secondary inspection.

As noted in *Bolton*, a claim that the roadblock itself was pretextual might be made on the basis of *Betancourt*, because the "guidelines include the reasonableness of the time, place, and duration of the roadblock, which bear on the effectiveness of the roadblock to serve its proper purpose." 111 N.M. at 34, 801 P.2d at 104. Here, however, defendants appear to have conceded the validity of the initial stop and to have claimed only that the detention, after their documents had been checked,

was pretextual. In so doing, I believe they raised questions of fact, which the trial court was entitled to resolve in favor of the state's witnesses. *See State v. Bolton.*

I am not yet convinced that *Betancourt* as this court has applied it requires the state to make a significantly different showing than that which the fourth amendment requires, and I am not prepared to say that the roadblock in this case was unreasonable as a matter of fourth amendment analysis. It is possible that the *Betancourt* analysis should be modified as a matter of state constitutional law in order to provide greater protection against the "potential for abuse of the authority to conduct roadblocks." *State v. Bolton,* 111 N.M. at 34, 801 P.2d at 104. Here, because defendants in effect conceded the reasonableness of the roadblock and chose to focus on the reasonableness of the detention at the roadblock, we need not decide whether the state's showing was sufficient under the fourth amendment nor whether a different result would have been required under the state constitution. To the extent defendants intended to raise on appeal the arguments made at trial, *Bolton* controls. To the extent the arguments made on appeal were not preserved, I agree that we ought not consider them. *See* SCRA 1986, 12–216. On this basis, I concur in the discussion as to issue one.